DYGUS et al. v. ROGERS et al.

No. 32521. May 27, 1947.

*181 P. 2d 253.*

Woodson E. Norvell, of Tulsa, and George E. Norvell, of Washington, D. C., for plaintiffs in error.

Edward H. Chandler, Ralph W. Garrett, and Robt. L. Imler, all of Tulsa, for defendant in error Sinclair Prairie Oil Company.

Chas. B. Rogers, of Tulsa, for defendant in error C. B. Rogers.

Marvin T. Johnson, of Tulsa, for defendant in error G. T. Price.

OSBORN, J. This action was brought by plaintiffs, Addie Dygus, J. J. McKeever, W. P. Keegan, and Lone Welch, against the defendants, C. B. Rogers, G. T. Price, and Sinclair Prairie Oil Company, to recover money alleged to be due plaintiffs under and by virtue of a certain contract which plaintiffs asserted was binding upon the defendants. Each of the defendants filed demurrers to the amended and substituted petition of plaintiffs, which demurrers were by the trial court sustained. Plaintiffs stood upon their amended and substituted petition, and thereupon the trial court entered judgment dismissing the action with prejudice. Plaintiffs appeal.

The decisive question presented is whether or not the contract, as alleged and set forth in plaintiffs' petition, was supported by a good and sufficient consideration.

Briefly stated, plaintiffs' amended and substituted petition alleged that on January 1, 1934, there was pending in the district court of Creek county a certain action in which one Wallace, the executor of the estate of Lete Kolvin Stevens, was plaintiff, and H. G. Barnard, Sinclair Prairie Oil Company, and others were defendants, which action in-

volved the ownership of oil and gas produced by Sinclair Prairie Oil Company and its codefendants from 80 acres of land in Creek county; that certain claimants to said oil, or the value thereof, had intervened in said action, said claimants being identified as the Izora Alexander Lee group of interveners, and that said group of interveners subsequently recovered judgment for the sum of about $4,000,000 against the defendants in said action.

The petition alleged that at and prior to January 1, 1906, one John Bullock and his wife, both enrolled freedmen citizens of the Creek Nation of Indians, had entered into possession of said 80-acre tract under a claim of ownership in their minor son, Robert Bullock, and had constructed thereon permanent and valuable improvements and cultivated the same, and that they were in possession of said property by their lessee on February 24, 1915; that on said last mentioned date the county court of McClain county, in which the Bullock family then lived, appointed John Bullock guardian of the person and estate of the said minor, Robert Bullock, and that on the same date, as such guardian, the said John Bullock, acting under the orders of the said county court, made, executed and delivered to the predecessors in interest of plaintiffs an oil and gas mining lease covering said 80-acre tract, which oil and gas lease was filed for record in Creek county on February 25, 1915, and that by various conveyances the said oil and gas lease was at and prior to January 1, 1934, vested in these plaintiffs.

The petition alleged that on January 1, 1934, the Izora Alexander Lee group of interveners was represented by an attorney named Spencer Adams, and that on said date, for and on behalf of his clients, the said Spencer agreed with plaintiffs that if the plaintiffs would refrain and forbear from filing in the above mentioned action any intervening petition or cross-petition, and would not otherwise appear or delay or interfere with the prosecution of the intervening

petition of said Izora Alexander Lee group of interveners, the said Adams and each and every member of said group would, upon final judgment therein, receive and hold in trust for plaintiffs a sum equal to 10 per cent of the amount of said judgment; that said agreement was oral, and that the proposition so made by Adams was accepted and agreed to by plaintiffs, and by them in all respects performed.

The petition further alleged that Spencer Adams died December 12, 1938, prior to the determination of the action above referred to; that the defendant Price was employed by Adams at the time said agreement was made and knew of the making thereof; that prior to the death of Adams the defendant C. B. Rogers was employed by Adams to assist him in the litigation, and that Rogers was informed of and, by accepting employment with Adams, became bound and liable to carry out the terms and provisions of said oral agreement.

The petition further alleged that before judgment was rendered in said action, defendant Sinclair Prairie Oil Company was informed of the existence of the oral agreement, said information having been conveyed to one of its attorneys; that said attorney approved said agreement and consented thereto, and that his acts in so doing were fully approved and confirmed by Sinclair Prairie Oil Company; that after judgment had been rendered in said action and while the case was pending on appeal to the Supreme Court of Oklahoma, it was settled by compromise and the appeal was caused to be dismissed, and the action dismissed with prejudice in the district court of Creek county to the damage of plaintiffs in the sum of $400,000, for which they pray judgment.

A copy of the oil and gas mining lease as made by John Bullock as guardian of the estate of Robert Bullock, a minor, to J. C. Maxwell, Henry Pack, and Lone Welch is attached to the petition as an exhibit. The term thereof was "during

the minority of the ward, and as much longer thereafter as oil or gas is found in paying quantities". It recites that on February 24, 1915, the guardian filed in the county court of McClain county his petition to lease said lands for oil and gas; that on the same date the county court made an order of sale directing the guardian to sell, at private sale to the highest bidder, an oil and gas lease on the land of the ward during the ward's minority and as much longer thereafter as oil or gas is found in paying quantities; that on said date the guardian sold the oil and gas lease to the above-named lessees, and that on the same date the county court made an order confirming and approving said lease.

The amended and substituted petition of plaintiffs does not allege that plaintiffs have paid any rentals under said lease, nor that they have produced any oil or gas from the lands covered thereby at an time, nor is there in said petition any averment from which it could be reasonably inferred that said oil and gas mining lease was still in force at the date of the agreement as between the lessor and the lessees.

Defendants demurred to the amended and substituted petition upon the ground, among others, that it failed to state facts sufficient to constitute a cause of action. We think that upon this ground the demurrers were well taken.

From the copy of the lease attached to and made a part of plaintiffs' petition it appears that said lease was made in violation of rule 9 of this court (in force at the time of its execution), which provided that the petition for the approval of an oil and gas lease must be filed five days before the lease was sold, and that such lease must be sold to the highest bidder in open court. This rule was in full force and effect at the time the lease was made. Garfield Oil Co. v. Crews, 134 Okla. 229, 273 P. 228. Said rule 9 had the same force and effect as a statute of this state. Winona Oil Co. v. Barnes, 83 Okla. 248,

200 P. 981. Therefore, the trial court would take judicial notice of its provisions. Kelley v. Garfield County Building & Loan Association, 180 Okla. 253, 68 P. 2d 811.

In Winona Oil Co. v. Barnes, supra, and Garfield Oil Co. v. Crews, supra, we held that a lease taken in violation of said rule was void.

However, in Garfield Oil Co. v. Crews, supra, we held that a minor lessor, upon reaching majority, could adopt and ratify such void lease so as to make the same binding upon him after such ratification or adoption. But, as stated above, plaintiffs' petition does not allege any facts from which ratification or adoption by the minor upon reaching his majority could be inferred. And if, as it appears from plaintiffs' petition, the minor was living in 1906, he would have reached majority not later than 1927. It therefore appears that the oil and gas lease upon which plaintiffs rely as the basis and foundation of the claim which they agreed to forego was, on the date of the agreement, of no force and effect whatever, and so far as the allegations of the petition show, plaintiffs, on the date of the alleged contract, had no right or claim to the oil and gas produced from the land involved in said action above referred to, or the money accruing therefor.

Plaintiffs in this court do not contend that the oil and gas lease was valid, or that it was in force and effect at the time the contract was made. It had expired, if ever valid, by its own terms, since they had produced no oil or gas thereunder. See Earp v. Midcontinent Petroleum Corp., 167 Okla. 86, 27 P. 2d 855, 91 A.L.R. 188; Continental Oil Co. v. Osage Oil & Refining Co. (C.C.A.) 69 F. 2d 19. They contend that regardless of this fact, their promise to forego the assertion of their claim in said action was a good consideration for the alleged agreement, as consideration is defined by 15 O.S. 1941 § 106. In support of this contention they cite Williston on Contracts, Rev. Ed. p. 326, section

102-A, in which it is stated that in order to be a good consideration neither the benefit of the promissor nor the detriment of the promisee need be actual. They rely also upon State v. Phillips Petroleum Co., 189 Okla. 629, 118 P. 2d 621, in which case, after quoting the majority rule as to the validity of a claim sufficient to support a promise, we said:

" 'A third view is that one has a right to sue when he believes that he has a good cause of action, that it is enough if plaintiff can show that at defendant's request he forebore to prosecute a claim which he believed to be well founded, and that it is no answer to show that the claim was not well founded or was not even reasonably doubtful.' "

In that case, however, we followed the majority or general rule, and held that the claim asserted by the property holders of Lincoln Terrace addition was not wholly without merit, but that the possibility existed that it could be successfully asserted, and that, therefore, it constituted a sufficient consideration for the compromise agreement therein held valid.

In Hulen v. Truitt, 188 Okla. 296, 108 P. 2d 170, the consideration for the agreement sued upon was the forbearance to assert a foundationless claim against an insolvent estate. We reviewed at some length the authorities upon the sufficiency of that promise to constitute consideration for the payment of a portion of the claim by one of the heirs of the estate, and approved and followed the general rule announced in 12 C.J. 327, as follows:

" 'While there is some authority to the effect that the compromise of a disputed claim will support an express promise, although the claim is without merit or foundation, particularly where an action has been instituted, the surrender of a claim which is entirely without foundation either in law or in equity does not, according to the weight of authority, afford a sufficient consideration for a compromise.' "

And, in conclusion, we said:

"We therefore hold that plaintiff's purported claim against the estate of Utie L. Moore is wholly without foundation and that a relinquishment of his right to proceed against said estate constituted no consideration whatever for any promise which might have been made by the defendant to pay a share of the indebtedness incurred by Walter A. Moore."

The trial court did not err in sustaining the demurrers, and in dismissing the action with prejudice upon the election of plaintiffs to stand upon the amended and substituted petition.

Affirmed.

HURST, C.J. DAVISON, V.C.J., and RILEY, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur.